UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCIA PEARSON,

                 Plaintiff,

-v-

WALDEN UNIVERSITY,

                 Defendant.

13-CV-7840 (KMK)

OPINION AND ORDER

Appearances:

Marcia Pearson
Valley Cottage, NY
*Pro Se Plaintiff*

Matthew R. Paul, Esq.
Paul & Paul, LLC
Westport, CT
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Plaintiff Marcia Pearson ("Plaintiff") brings this pro se action alleging that "due to [the] negligence of faculty and staff" employed by Defendant Walden University ("Defendant" or "University"), she "incurred student loan[ ] debt of $203,035.34." (Am. Compl. ¶ IIIC (Dkt. No. 15).) Plaintiff seeks one million dollars in damages "for pain, suffering, and loss of work." (*Id.* ¶ V.) Defendant moves to dismiss Plaintiff's Amended Complaint. (Dkt. No. 20.) For the foregoing reasons, Defendant's Motion is granted in part and denied in part.

### I. Background

#### A. Factual Background

      The Court accepts the following facts as true for the purpose of resolving the pending Motion. Defendant, headquartered in Minneapolis, Minnesota, is an online, for-profit degree-

granting university that requires its doctoral students to complete coursework known as Knowledge Area Modules ("KAMs") before beginning the dissertation-writing process.  (*See* Am. Compl. ¶ I.B); Pl.'s Aff'n in Opp'n to Mot. ("Pl.'s Aff'n") at unnumbered 2 (Dkt. No. 23); *see generally* Am. Compl. Ex. B (KAMs Handbook).)  The completion of KAMs is contingent on the approval of student work by a "University Research Reviewer" ("URR").  (*See* Am. Compl. ¶ III.C; *see generally id.* Ex. B.)  According to Plaintiff, the "[d]octoral programs that require . . . KAMs[] use a continuous enrollment model, in which[] the registrar's office automatically registers students each term[,]" such that students have to "pay tuition continuously . . . until the time they graduate, request a leave of absence, or withdraw from the university."  (Pl.'s Opp'n to Mot. To Dismiss ("Pl.'s Opp'n") at unnumbered 3 (Dkt. No. 25).)[1]

Plaintiff, a resident of Valley College, New York, was enrolled as a student at the University between September 6, 2005, and August 25, 2013.  (*See* Am. Compl. ¶ III.B.) Plaintiff maintains that she "mostly maintained a 4.0 grade point average and adhered to [the] Walden University Student Handbook[,] . . . graduat[ing] with a grade point average of 3.90." (Pl.'s Opp'n at unnumbered 1.)  Plaintiff alleges that, upon enrollment, she was told by an unspecified member of the University staff that "after a few classes of coursework," she "would

---

[1] Plaintiff also alleges in her Opposition that KAMs are "discriminatory" because "only certain doctoral programs require them and [only] certain doctoral students need to write them." (Pl.'s Opp'n at unnumbered 3–4.)  The Court will consider allegations contained in Plaintiff's Opposition to the extent they are consistent with the allegations contained in the Amended Complaint.  *See Alsaifullah v. Furco,* No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (noting that "although courts generally may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss, the mandate to read the papers of pro se litigants generously makes it appropriate to consider [the] plaintiff's additional materials," but only "to the extent that [they are] consistent with the allegations in the complaint" (italics and internal quotation marks omitted)); *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("[W]hen analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings.").

have to write two KAMs and that [she] was almost finish[ed]." (*Id.* at unnumbered 4.) It ultimately took Plaintiff eight years to receive her degree, and in the process she "incurred student loan[] debt of $203,035.34." (Am. Compl. ¶ III.C.)[2]

More specifically, Plaintiff alleges that her KAMs, which "students must complete . . . before starting the dissertation process," took two years to finish. (*Id.*) Further, Plaintiff contends that her dissertation proposal took three years to write because her "former mentors[] would not read her work" until the proposal was complete, and one of her mentors "advised that [she] rewrite [the proposal] if [she] wanted to work with him." (*Id.*)[3] Plaintiff contends that the delay cost her $39,200 in tuition. (Pl.'s Opp'n at unnumbered 4.) Finally, Plaintiff alleges that she was told in an April 30, 2013 email that the URR had until May 13, 2013 to review her work, which was necessary before Plaintiff "could proceed to the next step of the dissertation process, the Form and Style review." (Am. Compl. ¶ III.C.) Plaintiff alleges that the URR completed his review 3 days late, on May 16, 2013, (*id.*), and that throughout this time, the URR was "unprofessional, unavailable, and uncommunicative by refusing to respond to e-mails and telephone calls sent by the Office of Student Research Administration, . . . [P]laintiff's mentor and committee members, and . . . [P]laintiff herself," which was inconsistent with Defendant University's policies, (Pl.'s Opp'n at unnumbered 2).[4] Plaintiff claims that the delay cost her

---

[2] In addition to her sizable debt, Plaintiff also alleges that her ordeal has caused her to suffer from "[h]igh blood pressure" and that she "took time off from work" to try to complete her KAMs and dissertation proposal. (Am. Compl. ¶ IV.)

[3] In her Opposition, Plaintiff claimed that the proposal took only two years to complete. (Pl.'s Opp'n at unnumbered 3.)

[4] Although the Amended Complaint states that the URR completed the review on May 16, *2014* (*see* Am. Compl. ¶ III.C), the original Complaint alleges that the completion date was May 16, *2013*, (*see* Compl. ¶ III.C (Dkt. No. 2)). This appears to be the correct year, as Plaintiff's Opposition complains that the URR was three days, not a year and three days, late.

$163.00 in "continuous enrollment tuition," as well as "nervousness, anxiety, fear, and stress." (*Id.*)

Throughout this time period, Plaintiff claims that University faculty and staff exhibited a "lack of timely response and feedback," attributing her debt to their lack of diligence. (Am. Compl. ¶ III.C.) Plaintiff also claims that, in general, Defendant "fail[ed] to disclose all pertinent information about KAMs" and "to facilitate, guide, and evaluate student learning and professional development necessary for [P]laintiff to meet her academic objectives[,] such as to graduate in a timely manner." (Pl.'s Opp'n at unnumbered 4.)

### B. Procedural History

Plaintiff commenced this Action against Defendant on November 4, 2013. (Dkt. No. 2.) Following a pre-motion conference held on July 25, 2014, (*see* Dkt. (minute entry for July 25, 2014)), Plaintiff filed an Amended Complaint on July 30, 2014. In it, Plaintiff requested that the "Court . . . investigate the practices and policies of Walden University's money[-]making tactics targeting poor and minority students who incur high student loan debts leading to poverty, depression and poor health." (*Id.* ¶ V.) In her Opposition, however, Plaintiff for the first time made clear that she wished to allege claims for "negligence and breach of contract." (Pl.'s Opp'n at unnumbered 2.)

Plaintiff filed a motion for the appointment of pro bono counsel on July 30, 2014, (Dkt. No. 14), which the Court denied on November 10, 2014, (Dkt. No. 26). The Court also held a second pre-motion conference on September 19, 2014, (*see* Dkt. (minute entry for Sept. 19, 2014), at which it adopted a briefing schedule, (Dkt. No. 19). In accordance with that schedule, Defendant filed its Motion To Dismiss and supporting papers on October 2, 2014. (Dkt. Nos.

---

(*See* Pl.'s Opp'n at unnumbered 2; Pl.'s Aff'n at unnumbered 2.)

20–22, 24.)  Plaintiff preemptively filed an Affirmation in Opposition on September 25, 2014, (Dkt. No. 23), and then filed a second Opposition on October 16, 2014, (Dkt. No. 25).[5] Defendant filed its Reply on November 11, 2014.  (Dkt. No. 27.)

## II.  Discussion

### A.  Standard of Review

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (internal quotation marks and alterations omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," but if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.* at 570; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common

---

[5] Plaintiff appears to have filed her second Opposition twice, as both Docket Number 24, filed on October 14, 2014, and Docket Number 25, filed on October 16, 2014.  (*Compare* Dkt. No. 24 *with* Dkt. No. 25.)

5

sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Dixon v. United States*, No. 13-CV-2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014) ("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff's] complaint are true."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Because Plaintiff proceeds pro se, the Court must "construe[] [her] [Amended Complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013)

(same). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks removed)).

Furthermore, in deciding a motion to dismiss a pro se complaint, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks omitted), including "documents that a pro se litigant attaches to [her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in [her] papers opposing the motion"); *Rodriguez*, 2013 WL 4779639, at *1 ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (citations and internal quotation marks omitted)).

B.  Analysis

While generally a federal trial court sitting in diversity must apply the law of the forum state to determine the choice of law, *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001), here the application of such rules is unnecessary because Plaintiff is a New York domiciliary, Plaintiff participated in Defendant's doctoral program while domiciled in New York, *see 82-11 Queens Blvd. Realty, Corp. v. Sunoco, Inc. (R&M)*, 951 F. Supp. 2d 376, 381

(E.D.N.Y. 2013) ("[A] contract executed in New York and litigated in a district court sitting in New York while exercising diversity jurisdiction must be interpreted pursuant to New York law."), and both Parties appear to agree that New York law governs, given the only substantive case law referenced by either Party is that of New York, *see Johnson v. Walden Univ., Inc.*, 839 F. Supp. 2d 518, 525 (D. Conn. 2011) (applying Connecticut law to breach of contract claim because "[b]oth parties have cited Connecticut law to support their respective positions and therefore accept the application of the law of the forum state"); *Margrabe v. Sexter & Warmflash, P.C.*, No. 07-CV-2798, 2009 WL 361830, at *5 n.5 (S.D.N.Y Feb. 11, 2009) (applying New York law because "[t]he [p]arties appear[ed] to agree that [it] govern[ed] [the] dispute"), *aff'd*, 353 F. App'x 547.  Accordingly, the Court will analyze each of Plaintiff's claims under New York law.

    1.  Breach of Contract

Under New York law, a student may sue her school for breach of a contract, namely that "if the student complies with the terms prescribed by the university, [she] will obtain the degree [she] seeks." *Babiker v. Ross Univ. Sch. of Med.*, No. 98-CV-1429, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000), *aff'd*, 86 F. App'x 457 (2004).[6]  Such contractual claims are subject to judicial review "to determine whether [the school] abided by [its] own rules, and whether [it has] acted in good faith or [its] action was arbitrary or irrational." *Gertler v. Goodgold*, 487 N.Y.S. 2d 565, 570 (App. Div. 1985), *aff'd*, 489 N.E. 2d 748 (1985).  Moreover, in such cases, "'[t]he

---

    [6]  A "duly authorized" school handbook may serve as the basis for a breach of contract claim. *Holm v. Ithaca Coll.*, 669 N.Y.S. 2d 483, 485 (Sup. Ct. 1998), *aff'd*, 682 N.Y.S. 2d 295 (App. Div. 1998) (finding that "disciplinary rules contained in [college] [h]andbooks" were "contractual in nature and, so far as applicable, [bound[ both the [c]ollege and the plaintiff"). Also, "bulletins, circulars, and regulations made available to the student" may provide the terms of the implied contract. *Babiker*, 2000 WL 666342, at *6.

mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim upon which a relief can be granted.'" *See Rodriguez v. N.Y. Univ.*, No. 05-CV-7374, 2007 WL 117775, at *4 (S.D.N.Y. Jan. 16, 2007) (quoting *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206–07 (S.D.N.Y. 1998)).

"Cognizant of the danger that judicial interference could pose to academic freedom, New York courts are deferential when reviewing university academic decisions." *Bhandari v. Tr. of Columbia Univ.*, No. 00-CV-1735, 2000 WL 310344, at *5 (Mar. 27, 2000). For example, "courts have long been reluctant to intervene in controversies involving purely academic determinations[,]" which are vital to the integrity of the academic institution. *Susan M. v. N.Y. Law Sch.*, 556 N.E. 2d 1104, 1107 (N.Y. 1990); *see also Zanelli v. Rich*, 8 N.Y.S.3d 217, 218 (App. Div. 2015) (same). Indeed, courts should rarely "involve [themselves] in the subjective professional judgments of trained educators," as the "student-university relationship does not provide judicial recourse for every disgruntled student." *Gally*, 22 F. Supp. 2d at 207; *cf. Gary v. N.Y. Univ.*, 850 N.Y.S. 2d 433, 434 (App. Div. 2008) ("In challenging the termination of her matriculation, along with allegations based on contract, tort[,] and racial discrimination, the pro se plaintiff should have brought a proceeding under CPLR article 78, rather than this plenary action."); *Jennings v. Teachers Coll.*, 920 N.Y.S. 2d 241, 241 (Sup. Ct. 2010) ("Otherwise put, actions challenging the subjective professional judgments of trained educators are subject to review under Article 78 and not in a plenary action." (citation and internal quotation marks omitted)). Accordingly, judicial review is limited to "the question of whether the challenged determination was arbitrary and capricious, irrational, made in bad faith[,] or contrary to Constitution or statute," a standard that has "rarely been satisfied." *Susan M.*, 556 N.E. 2d at 1107; *see also Rodriguez*, 2007 WL 117775, at *4 ("Breach of contract claims brought by

students against universities are subject to judicial review only to determine whether the defendants abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational." (citation and internal quotation marks omitted)).

Plaintiff alleges three ways in which Defendant breached its contract with Plaintiff. Plaintiff's first contention is that, contrary to the University's policy, three of her professors did not, and would not, read her work until all three chapters of her dissertation proposal were written. (*See* Am. Compl. ¶ III.C; Pl.'s Opp'n 4.) To support this claim, Plaintiff alleges that the Walden University KAMs Handbook (the "Handbook"), which she attached to the Amended Complaint, provides that faculty should "complet[e] appropriate action on material received from students within 14 calendar days of their receipt." (*See* Pl.'s Opp'n at unnumbered 4.) While the attached Handbook does not contain the exact language Plaintiff cites, it does indicate that "[e]ach faculty assessor has 14 calendar days from receipt of . . . work to either approve it or advise you on how to improve it." (Am. Compl. Ex. B, at 3; *see also id.* Ex. A at unnumbered 3 (email from the Office of Student Research Administration indicating that "[t]he URR ha[d] 14 calendar days to complete the review" of Plaintiff's dissertation materials).) Defendant does not contest the fact that it is University policy for faculty members to complete review of student work within 14 days of receipt.

Plaintiff does not allege that she did not receive a reply from her professors regarding her dissertation proposal within 14 days, but rather appears to assert that the nature of the reply—that they would not review her proposal until all three chapters of the proposal were written—did not constitute "appropriate action" under the Handbook. Her claim thus fails for two reasons. First, the professors' response appears to comply with the letter of the University rule, in that (a) the rule does not require that faculty review incomplete work, and (b) Plaintiff's professors *did*

10

provide a response as to how her work could be "improve[d]," namely that it should be completed. *Cf. Silverman v. N.Y. Univ. Sch. of Law*, 597 N.Y.S. 2d 314, 315 (App. Div. 1993) (dismissing breach of contract claim because the plaintiff's "allegations that defendants violated certain provisions of the [s]tudent [h]andbook are flatly contradicted by the [h]andbook itself"); *DeSimone v. Skidmore Coll.*, 553 N.Y.S. 2d 240, 242 (App. Div. 1990) (finding that the plaintiff failed to establish a breach of contract claim because the handbook at issue did not include an "express limitation" on the defendant's discretion in deciding whether to renew an employee's contract). Second, to the extent that Plaintiff was unhappy with the professors' response, faculty review of a student's work is, at core, precisely the type of professional judgment due deference from the Court, as described above. *See Flomenbaum v. N.Y. Univ.*, 890 N.Y.S. 2d 493, 498 (App. Div. 2009) ("[C]ourts should show great respect for the faculty's professional judgment. 'Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'") (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)); *Patti Ann H. v. N.Y. Med. Coll.*, 453 N.Y.S. 2d 196, 199 (App Div. 1982) ("Our courts have long recognized that the management of educational institutions rests on those with special skills and sensitivities. For this reason, courts should only rarely assume academic oversight, except with the greatest caution and restraint." (alternations and internal quotation marks omitted)). Plaintiff makes no allegations suggesting that her professors' actions were arbitrary and capricious, or irrational. Accordingly the Court defers to their judgment.

Plaintiff's second contention is that KAMs are "discriminatory" because "only certain doctoral programs require them and certain doctoral students need to write them." (Pl.'s Opp'n at unnumbered 4-5.) This claim is also without merit. First, Plaintiff does not offer any

allegations indicating how the KAMs process is discriminatory, e.g., to which doctoral programs it applies, or the differences among those programs. Plaintiff only generally alleges, in her Affirmation, that Defendant "discriminate[s] among doctoral students on the basis of the type of KAM-based (i.e., continuous enrollment) and non-KAM-based programs offered," which simply describes the *fact* that there are some KAM-based programs, and some that are not, without any explanation as to why they are discriminatory. (Pl.'s Aff'n at unnumbered 3.) Second, even if the KAMs process were discriminatory, it is unclear how a discriminatory policy substantiates a breach of contract claim. Plaintiff does not allege that she was unaware that the doctoral program she enrolled in required KAMs or that any promise was breached. *See Evans v. Columbia Univ. in the City of N.Y.*, No. 14-CV-2658, 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015) (holding that "a student cannot maintain a breach of contract claim against a university based solely on the implied covenant of 'good faith,' . . . or a university's 'broad policy statements' (citations omitted)). Moreover, to the extent that Plaintiff objects to the mere fact that her doctoral program requires KAMs at all, this is yet another core academic decision that is outside the scope of judicial review, *see Susan M.*, 556 N.E. 2d at 1106–07, and Plaintiff again makes no attempt to describe why Defendant's inclusion of KAMs in her program is irrational, or arbitrary and capricious.

      Plaintiff's third contention is that Defendant breached its contract by acting in bad faith, namely by "(1) failing to disclose all pertinent information about the KAMs requirements at orientation[,] and (2) failing to facilitate, guide, and evaluate [Plaintiff's] learning and professional development" such that she would "meet her academic objectives [and] graduate in a timely manner." (Pl.'s Opp'n at unnumbered 4.)[7] However, conclusory allegations of this sort

---

[7] Plaintiff also alleges, in her Affirmation, that Defendant "neglected to warn or notify

are insufficient to state a claim. *See Gally*, 22 F. Supp. 2d at 207 ("Indeed, the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted. The application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student."). Plaintiff does not point to provisions in the Handbook or elsewhere that establish a duty to disclose the KAMs process or to provide the faculty support to which Plaintiff believes she was entitled. Nor does Plaintiff put forth any supporting allegations indicating what she knew about the KAMs process and when, or how University faculty failed to "facilitate, guide, and evaluate" Plaintiff, other than an allegation that only one mentor provided feedback on the first chapter of her dissertation proposal. (Pl.'s Aff'n at unnumbered 2.) It is not clear why feedback from one mentor is insufficient, but in any event, this hardly qualifies as the type of arbitrary action that merits judicial intervention. Because Plaintiff offers only "bald assertions and conclusory allegations claiming that the University's rules or procedures were not followed," Plaintiff's claim does not survive Defendant's Motion. *Ward v. N.Y. Univ.*, No. 99-CV-8733, 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 28, 2000).

     2. Negligence

Under New York law, to succeed on a negligence claim, a plaintiff must prove: (1) that the defendant owed a duty of care to the plaintiff; (2) a breach of this duty of care; and (3) injury to the plaintiff as a proximate cause of the defendant's breach of duty. *See King v. Crossland Savings Bank*, 111 F.3d 251, 255 (2d Cir. 1997) ("New York courts require a plaintiff to show: (1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant

---

[Plaintiff] of the 8-year rule," which the Court presumes consisted of an eight year time *limit* on completing the requirements for graduation. (Pl.'s Aff'n at unnumbered 3.)

breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach."). Plaintiff's negligence claim is based on the allegation that her URR "had a duty to perform quality assessment on [her] dissertation within the specific timeframe of 14 calendar days," yet "missed the review deadline by [three] days," resulting in a delay in the "Forms and Style" portion of her dissertation process that in turn caused monetary and emotional damages. (Pl.'s Opp'n at unnumbered 3.)

The Court first notes that contrary to Defendant's contention, the three-day delay here is not deserving of the same deference as the decisions discussed above. There is no evidence that the delay was a matter of "professional judgment" or a purely "academic question." Rather, it appears to be simply a failure of Plaintiff's URR to adhere to the dictates of the Handbook. There may be sound reasons for such delay, but at this stage, no Party alleges what these reasons were and whether there were communicated to Plaintiff. Thus, the URR's actions are subject to the full scope of judicial review, as opposed to a mere determination of irrationality, or arbitrariness and capriciousness.

In this context, Defendant's only relevant response to Plaintiff's negligence claim is that "if every short delay by a professor in responding to an email or reviewing a paper justified judicial review[,] then the courts would be overwhelmed with such claims." (Def.'s Mem. of Law in Supp. of Mot. To Dismiss 5 (Dkt. No. 21); *see also* Def.'s Reply in Further Supp. of Mot. To Dismiss 3 (Dkt. No. 27).) True enough, but it may be that few universities have an explicit 14-day review policy or charge continuous tuition such that a minor delay has a definite, traceable cost to its students. Where an institution charges tuition on a continuous basis, it is at least foreseeable that a delay in reviewing student work will cost the student money in the form of additional tuition.

Here, Plaintiff claims that the three-day delay by the URR in finishing his review of her dissertation cost Plaintiff "$163 in monetary damages, which [were] paid in the form of continuous enrollment tuition," as well as caused Plaintiff "mental anguish . . . anxiety, fear, and stress." (Pl.'s Opp'n 3; Pl.'s Aff'n at unnumbered 2.) There is a question, which may be answered during the discovery process, as to whether the three-day delay was the cause of the added tuition, as the emails attached as exhibits to Plaintiff's Amended Complaint suggest that the short delay had no effect on Plaintiff's need to enroll for another term. (*See, e.g.,* Am. Compl. Ex. A. at unnumbered 13 (email from Aqueil Ahmad to Plaintiff indicating that "given the complicated nature of [t]he URR process" he "doubt[s] [Plaintiff] could have avoided another quarter of enrollment[,]" even if Plaintiff's URR had completed his work on time). But, the question of whether Plaintiff ultimately will be able to substantiate her claim that the URR's three-day delay (that is, three days beyond what the Handbook required he complete his review of Plaintiff's dissertation) caused her $163 in tuition (as well as mental anguish and the like) is beyond the scope of the pending Motion. For now, the Court concludes that Plaintiff has plausibly stated her claim for $163 in tuition costs and other damages resulting from the delayed URR review.[8]

---

[8] As noted, Plaintiff asserts that the URR's three-day delay in completing the review of her dissertation was negligent. However, there is an argument that Plaintiff's claim on this point also could be viewed as either a breach of contract or promissory estoppel claim. *See Robbe v. Webster Univ.*, No. 14-CV-1223, 2015 WL 1412014, at *5 (E.D. Mo. Mar. 25, 2015) ("The Court finds that Plaintiff's allegations that she paid tuition for the opportunity to defend a thesis if it were deemed passable, coupled with her allegation that the setting of a thesis defense date by definition means that the thesis has been deemed passable, and her allegation that she was deprived of the opportunity to so defend her thesis after a defense date was set, are sufficient allegations of detrimental reliance."); *Paladino v. Adelphi Univ.*, 454 N.Y.S. 2d 868, 873 (1982) (noting that "if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable."). Either way, the Court denies Defendant's Motion to Dismiss as to this claim.

### III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted in part and denied in part. The Clerk of the Court is respectfully directed to terminate the pending Motion. (Dkt. No. 20.)

SO ORDERED.

Dated: October 30, 2015
      White Plains, New York

KENNETH M. KARAS
United States District Judge